**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO.: ______________________________

BURGER KING COMPANY, LLC,

Plaintiff,

vs.

ALL AMERICAN CROWN, LLC
and KETAN PANDYA,

Defendants.
_______________________________/

**COMPLAINT**

Plaintiff Burger King Company, LLC ("BKC") sues Defendants All American Crown, LLC ("Crown") and Ketan Pandya ("Pandya") (Crown and Pandya are hereinafter collectively referred to as "Defendants") and states:

**THE PARTIES**

1. Plaintiff BKC is a Florida limited liability company with its principal place of business in Miami, Florida.

2. The sole member of BKC is Burger King Corporation, a Florida corporation with its principal place of business in Florida.

3. Defendant Crown is a Texas limited liability company with its principal place of business in Austin, Texas.

4. Defendant Pandya is a citizen and resident of the State of Texas.

5. Defendant Pandya is the sole member of Defendant Crown.

**JURISDICTION AND VENUE**

6. BKC, the franchisor of the BURGER KING® brand, franchises stores in the United

States that are involved in, among other things, the sale of selected foods and beverages. BKC's franchise operations are conducted and supervised from its headquarters located in Miami, Florida.

7. BKC and both Defendants have carried on a continuous course of direct communications by mail, e-mail and by telephone through BKC's headquarters in Miami, Florida.

8. The course of dealing between BKC and each of the Defendants shows that decision-making authority is vested in BKC's headquarters in Miami, Florida.

9. Both Defendants voluntarily entered into contractual relationships with BKC which envisioned continuing and wide-reaching contacts with BKC at BKC's headquarters in Miami, Florida.

10. Both Defendants have purposefully availed themselves of the benefits and protection of Florida law by entering into agreements with BKC which expressly provide that Florida law will govern any disputes among the parties.

11. Defendants have breached contracts which were to be performed in Florida due to, among other things, their failure to make payments to BKC in Miami, Florida. Defendants' breaches have caused damage to BKC at its headquarters in Miami, Florida.

12. This Court has jurisdiction over this action based upon 28 U.S.C. §1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000.00.

13. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391 and the forum selection clauses agreed to by the parties in their written agreements. In the parties' agreements, Defendants agreed that the United States District Court for the Southern District of Florida shall be the venue and exclusive proper forum in which to adjudicate any case or controversy arising, either directly or indirectly, under or in connection with the agreements. Additionally, Defendants agreed not to contest or challenge the jurisdiction or venue of this Court.

The parties' agreements are governed by Florida law, involve consideration of not less than $250,000 and bear a substantial relationship to Florida, where BKC is a resident and is headquartered.

**THE FRANCHISE AGREEMENTS AND GUARANTIES**

14. Crown previously owned and operated numerous BURGER KING® restaurants, including 10 franchised BURGER KING® restaurants (the "Restaurants") using BKC's system, service marks and trademarks, in accordance with the terms and conditions of 10 Franchise Agreements dated August 31, 2023 (collectively the "Franchise Agreements"). The Franchise Agreements are, in all material respects, the same. A true and correct copy of one of Crown's Franchise Agreements is attached as Exhibit "A."

15. The Restaurants' numbers and addresses are set forth below:

| Restaurant No. | Restaurant Location |
|---|---|
| 2465 | 1305 South 5th Street<br>Leesville, LA |
| 9005 | 6020 Old Boyce Road<br>Alexandria, LA |
| 9727 | 150 Hospital Road<br>New Roads, LA |
| 9862 | 915 Keyser Avenue<br>Natchitoches, LA |
| 11560 | 3000 Highway 112<br>Lecompte, LA |
| 13276 | 1413 Ringold<br>Coushatta, LA |
| 18302 | 2951 Hwy 28 East<br>Pineville, LA |
| 23834 | 29180 S. Frost Road<br>Livingston, LA |
| 24001 | 1589 Marchard Dr.<br>Donaldsonville, LA |
| 24002 | 7131 US Hwy 61<br>St. Francisville, LA |

16. Pursuant to written guarantees (collectively the "Guarantees"), Pandya absolutely and unconditionally guaranteed the payment and performance of each and every obligation of Crown to BKC under the Franchise Agreements.

17. Under the terms of the Franchise Agreements, Crown was obligated to make payments to BKC for royalties, advertising and other fees. Specifically, the Franchise Agreements required Crown to pay BKC a royalty of a certain percentage of weekly gross sales in return for the use of the BURGER KING® System and BKC's trademarks (the "Marks").

18. Additionally, the Franchise Agreements obligated Crown to pay BKC an amount equal to a certain percentage of Crown's monthly gross sales for the preceding calendar month in return for advertising expenditures made by BKC on behalf of the entire BURGER KING® System. All royalty and advertising payments were required to be paid to BKC in Miami, Florida.

19. Crown was obligated by its Franchise Agreements to pay other amounts including, without limitation, amounts associated with mobile ordering.

20. The Franchise Agreements and Guarantees (collectively the "Agreements") contain provisions regarding defaults and establishing the parties' rights and obligations in the event of a default by Defendants.

21. The Franchise Agreements provide that Crown's failure to comply with any provision of the Franchise Agreements, including the failure to pay amounts owed to BKC, is a default thereunder. The Franchise Agreements further provide that if an act of default occurs and Crown fails to cure the default after any required notice and within the cure period applicable, if any, BKC may, at its option and without prejudice to any other rights or remedies provided, terminate the Franchise Agreements.

22. By letters dated May 29, 2025, July 22, 2025 and August 21, 2025, BKC notified

Defendants that Crown had defaulted under the Franchise Agreements for failing to pay amounts owed to BKC.

23. Defendants did not cure any of the defaults.

24. On August 21, 2025, BKC sent Defendants a letter informing them that the Franchise Agreements were deemed terminated.

**THE LIMITED LICENSE AGREEMENT**

25. On August 23, 2025, BKC and Defendants entered into a limited license agreement (the "Limited License Agreement"). A true and correct copy of the Limited License Agreement is attached as Exhibit "B."

26. In the Limited License Agreement, Defendants acknowledged and agreed that the defaults and termination of the Franchise Agreements had been valid and proper.

27. Notwithstanding that the Franchise Agreements had been properly terminated, through the Limited License Agreement, Defendants were given a temporary license to operate the Restaurants through November 23, 2025 (unless extended), to give them an opportunity to sell the Restaurants.

28. On January 7, 2026, the parties entered an amendment to the Limited License Agreement which extended the term to February 15, 2026.

29. On February 17, 2026, the parties entered another amendment to the Limited License Agreement which further extended the term through March 31, 2026 (the "Sale Date").

30. In the February 17, 2026, amendment, Defendants acknowledged and agreed that BKC had no obligation to extend the Sale Date and would not extend the Sale Date, and that Defendants had no right to, or expectation of, any extension of the Sale Date.

31. Although the Franchise Agreements had been terminated, pursuant to the Limited

License Agreement, all terms of the Franchise Agreements (other than the term and right of successor or renewal) not inconsistent with the Limited License Agreement were incorporated into the Limited License Agreement.

32. Included in Defendants' obligations was the obligation to make payment of all amounts owed under the Franchise Agreements on or before the 10th day of each month, except the payment of base rent which was due on or before the first day of each month.

33. Defendants also agreed that on or before the earlier of (i) the date of the closing of the sale for the Restaurants; and (ii) the Sale Date of March 31, 2026, Defendants would pay to BKC all sums due and owing to BKC at such time including BKC's attorneys' fees and costs incurred in connection with its prior enforcement of the Franchise Agreements, along with interest at a rate of ten percent per annum.

34. Defendants further agreed that their failure to comply with any term of the Franchise Agreements or the Limited License Agreement would constitute a default.

35. Defendants agreed that if they committed a default and failed to timely cure the default, then the Limited License Agreement and all rights conferred thereby would automatically terminate without notice as of the day immediately following the expired cure period

## DEFENDANTS' BREACHES OF THE LIMITED LICENSE AGREEMENT

36. As noted above, pursuant to the Limited License Agreement, Defendants were obligated to pay to BKC all amounts owed to BKC by no later than March 31, 2026.

37. Defendants did not sell the Restaurants by March 31, 2026, which is the date on which the Limited License Agreement, as amended, expired on its own terms.

38. Defendants did not timely pay to BKC the amounts that were owed pursuant to the Limited License Agreement.

39. On April 27, 2026, BKC sent Defendants a letter informing them that the Limited License Agreement had been deemed terminated.

**<u>THE FRANCHISE AGREEMENT, GUARANTY AND LEASE FOR THE ALEXANDRIA RESTAURANT</u>**

40. On or about August 31, 2023, Crown entered a franchise agreement (the "Alexandria Franchise Agreement") with BKC to own and operate Restaurant No. 12673 located at 1207 Macarthur Drive, Alexandria, Louisiana 71303 (the "Alexandria Restaurant"). A true and correct copy of the Alexandria Franchise Agreement is attached as Exhibit "A."

41. The term of the Alexandria Franchise Agreement was through December 31, 2032.

42. Pursuant to section 5.G. of the Alexandria Franchise Agreement, Crown was obligated to have the Alexandria Franchise Agreement open for business every day of the year (other than certain holidays) unless expressly authorized otherwise by BKC.

43. On or about August 31, 2023, Crown also entered a lease agreement (the "Alexandria Lease") for the Alexandria Restaurant. A true and correct copy of the Alexandria Lease is attached as Exhibit "C."

44. The term of the Alexandria Lease ran through December 31, 2032.

45. Pursuant to section 5.2 of the Alexandria Lease, Crown was obligated to keep and maintain the Alexandria Restaurant in first-class order and condition, to make all necessary repairs and to avoid damage to the Alexandria Restaurant.

46. Pursuant to section 9.1(c) of the Alexandria Lease, Crown's abandonment or failure to do business at the Alexandria Restaurant would constitute a breach of the Alexandria Lease.

47. Likewise, section 9.1(f) states that the failure to perform any nonmonetary obligations under the Alexandria Lease would constitute a breach of the Alexandira Lease.

48. Contemporaneously with the execution of the Alexandria Franchise Agreement and

the Alexandria Lease, Pandya executed a personal guaranty of Crown's obligations under the Alexandria Franchise Agreement and the Alexandria Lease (the "Guaranty"). Pursuant to the Guaranty, Pandya absolutely and unconditionally guaranteed the performance of each and every term, condition and restriction in the Alexandria Franchise Agreement and the Alexandria Lease. A true and correct copy of the Guaranty is attached as Exhibit "D."

**DEFENDANTS' ABANDONMENT AND DAMAGE TO THE ALEXANDRIA RESTAURANT**

49. On or about December 6, 2024, Crown stopped operating the Alexandria Restaurant without BKC's authorization.

50. Crown unilaterally terminated the Alexandria Franchise Agreement by permanently abandoning the Alexandria Restaurant.

51. Crown also caused significant damage to the Alexandria Restaurant and failed to repair it.

52. Crown has not paid rent on the Alexandria Lease since it abandoned the Alexandria Restaurant.

**THE PROFIT SHARING AGREEMENT AND CROWN'S BREACH**

53. On August 22, 2023, Crown entered an asset purchase agreement (the "APA") to acquire 13 BURGER KING® restaurants.

54. At the time, Crown was indebted to BKC in the aggregate amount of $350,000, which represented a negotiated reduced amount that was previously owed to BKC (the "Franchisor Debt").

55. In order to pay off the Franchisor Debt to BKC, in August of 2023, Crown entered a Tri-Party Profit-Sharing Agreement (the "Profit Sharing Agreement"). A true and a correct copy of the Profit Sharing Agreement is attached as Exhibit "E."

56. Pursuant to the Profit Sharing Agreement, Crown was obligated to make periodic payments to BKC until the full amount of the Franchisor Debt was satisfied.

57. Crown failed to make any payments to BKC under the Profit Sharing Agreement.

58. Defendants have agreed in writing that in any litigation to enforce the terms of the agreements between BKC and Defendants, BKC, as the prevailing party, shall be paid by Defendants all costs, including attorneys' fees, incurred as a result.

59. BKC has engaged the undersigned counsel and has agreed to pay counsel reasonable attorneys' fees for all services rendered in this action and otherwise in connection with enforcing the agreements between BKC and Defendants.

60. All conditions precedent to the institution of this action have been satisfied, discharged, excused, and/or waived.

**COUNT I**
**BREACH OF LIMITED LICENSE AGREEMENT**
**(Against Crown and Pandya)**

61. BKC re-alleges and incorporates paragraphs 1 through 60 above as if fully set forth herein.

62. Defendants have not paid when due amounts owed to BKC under the Limited License Agreement.

63. The failure of Defendants to pay BKC as obligated is a breach of the Limited License Agreement.

64. This breach has directly and proximately caused loss and damage to BKC.

**COUNT II**
**BREACH OF ALEXANDRIA FRANCHISE AGREEMENT**
**(Against Crown)**

65. BKC re-alleges and incorporates paragraphs 1 through 60 above as if fully set forth herein.

66. Crown's abandonment of the Alexandria Restaurant and unilateral termination of the Alexandria Franchise Agreement constitute breaches of the Alexandria Franchise Agreement.

67. These breaches have directly and proximately caused loss and damage to BKC.

**COUNT III**
**BREACH OF ALEXANDRIA LEASE**
**(Against Crown)**

68. BKC re-alleges and incorporates paragraphs 1 through 60 above as if fully set forth herein.

69. Crown's damage to the Alexandria Restaurant, failure to repair the damage to the Alexandria Restaurant, abandonment of the Alexandria Restaurant and failure to pay to BKC amounts owed under the Alexandria Lease constitute breaches of the Alexandria Lease.

70. These breaches have directly and proximately caused loss and damage to BKC.

**COUNT IV**
**BREACH OF GUARANTY**
**(Against Pandya)**

71. BKC re-alleges and incorporates paragraphs 1 through 60 and 65 through 70 above as if fully set forth herein.

72. Pursuant to the Guaranty, Pandya unconditionally guaranteed the performance of Crown's obligations under the Alexandria Franchise Agreement and the Alexandria Lease.

73. Pandya breached his obligations under the Alexandria Franchise Agreement and the Alexandria Lease by abandoning the Alexandria Restaurant, terminating the Alexandria Franchise Agreement and by damaging and failing to repair the Alexandria Restaurant.

74. These breaches have directly and proximately caused loss and damage to BKC.

**COUNT V**
**BREACH OF PROFIT SHARING AGREEMENT**
**(Against Crown)**

75. BKC re-alleges and incorporates paragraphs 1 through 60 above as if fully set forth herein.

76. Crown has not paid when due amounts owed to BKC under the Profit Sharing Agreement.

77. The failure of Crown to pay BKC as obligated is a breach of the Profit Sharing Agreement.

78. This breach has directly and proximately caused loss and damage to BKC.

**DEMAND FOR ATTORNEYS' FEES AND COSTS**

The written agreements at issue in this litigation provide that the prevailing party is entitled to its attorneys' fees and costs. BKC hereby demands that it be reimbursed by Defendants for all costs and expenses (including attorneys' fees) relating to prosecution of this action.

WHEREFORE, Plaintiff Burger King Company, LLC demands judgment against Defendants All American Crown, LLC and Ketan Pandya, jointly and severally, for damages, plus pre-judgment interest, attorneys' fees and costs, and for such other and further relief as the Court deems proper.

Dated: August 25, 2026

Respectfully submitted,

*/s/ Aaron S. Blynn*
Michael D. Joblove, Esq.
Florida Bar No.: 354147
mjoblove@venable.com
Aaron S. Blynn, Esq.
Florida Bar No.: 073464
asblynn@venable.com
VENABLE LLC
801 Brickell Avenue, 15th Floor
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310
*Attorneys for Burger King Company, LLC*